## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TIFFANY BRADFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-120-RAW |
| | ) | |
| MICHAEL BURNETT, an individual, and | ) | |
| CITY OF SEMINOLE, OKLAHOMA. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the motion of the defendant Michael Burnett for summary judgment. Plaintiff filed her complaint pursuant to 42 U.S.C. §1983 in this court on March 25, 2013, alleging that Burnett (a Seminole police lieutenant) used excessive force when he deployed his taser (an electric shocking device) against her and that the City of Seminole's "policymakers ratified and approved" his misconduct.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. In making that determination, a court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Salazar v. City of Commerce City,* 2013 WL 5303257 (10th Cir.2013).

Burnett raises qualified immunity among other issues. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly

established." *Becker v. Bateman,* 709 F.3d 1019, 1022 (10th Cir.2013). "If, and only if, the

plaintiff meets this two-part test does a defendant then bear the traditional burden of the

movant for summary judgment." *Rojas v. Anderson,* 727 F.3d 1000, 1003 (10th Cir.2013).

This court has discretion to determine which of the two prongs of the qualified immunity

analysis should be addressed first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Because

of the intertwined nature of the argument made, the court will address both prongs in order.[*]

In qualified immunity cases, in determining whether a plaintiff has satisfied her initial

burden, viewing the record in the light most favorable to plaintiff usually means adopting the

plaintiff's version of the facts. *Rojas,* 727 F.3d at 1004 n.5. Plaintiff's version (as set forth

in her response brief) is as follows. On October 11, 2012, Officer Ayers of the Seminole

Police Department pulled over the vehicle plaintiff was driving for traffic violations. There

were three people in the vehicle: plaintiff, Kenneth Mooney, and Angela Marriot. During

the stop, Ayers suspected plaintiff of driving while impaired and he initiated an investigation

to determine his suspicions. Shortly thereafter, defendant Burnett arrived on the scene as a

backup officer.

---

[*]In addition to the arguments discussed below, defendant also contends plaintiff's claim should be dismissed pursuant to *Heck v. Humphrey,* 512 U.S. 477 (1994). Under that decision, a plaintiff cannot maintain a §1983 suit for damages if success on the §1983 claim would "necessarily imply" the invalidity of a related prior criminal conviction, such as by negating an element of the convicted offense. Id. at 486-87 & n.6. This court declines to dismiss on that ground. "Plaintiffs may, consistent with *Heck*, pursue claims that the arresting officers used excessive force subsequent to Plaintiffs' unlawful resistance, delay, or obstruction, such as a claim of post-arrest excessive force, or a claim that, though having a right to use reasonable force based on Plaintiffs' [statutory] violations, the arresting officers responded with excessive force." *Rodriguez v. City of Modesto,* 2013 WL 3958459 at *2 (9th Cir.2013)(citations omitted). *See also Price v. Philpot,* 420 F.3d 1158, 1163 n.3 (10th Cir.2005).

Plaintiff admitted to Ayers that she had consumed alcohol earlier in the evening. Ayers then handcuffed plaintiff and placed her in the backseat of his patrol vehicle so that he could investigate Mooney and Marriot. Plaintiff then panicked and crawled into the front seat of the vehicle, opened the car door, and exited the vehicle. As she did so, a girl riding in Burnett's vehicle yelled to the officers that plaintiff was escaping. Plaintiff panicked further and began running down the embankment on the side of the road.

When plaintiff reached the bottom of the embankment, she heard an officer command her to stop, which she did. She then turned sideways, faced Burnett, and showed him that she was still under the restraint of handcuffs. Burnett, who by this time was closing in on plaintiff at full stride, tackled her to the ground. Burnett then pulled plaintiff back up onto her feet by the handcuffs and took her back to his police vehicle where he, once again, placed her in the backseat of a patrol car and left her unattended. Once plaintiff was back in Burnett's vehicle, the officers continued their investigation. After some time had passed, plaintiff began to panic again, and again crawled into the front seat of the police vehicle. This time, Ayers noticed plaintiff sitting in the front seat and both officers approached the vehicle, yelling at plaintiff to get out of the car. When they arrived at the vehicle, one of the officers opened the door, and although plaintiff showed the officers her hands and told them she was not resisting, Burnett used his taser in "drivestun" mode on plaintiff multiple times.[**]

---

[**]Evidently, "drivestun" mode is generally not as severe as "dart" mode. *See Abbott v. Sangamon County,* 705 F.3d 706, 725 (7th Cir.2013).

After Burnett delivered a five-second, fifty-thousand volt shock to multiple areas of plaintiff's body, he then forcibly removed her from the vehicle by her handcuffs, and pulled her down onto the asphalt. He then dragged her by the handcuffs the distance from the front door of the vehicle to the rear of the vehicle where he told her to stay on the ground. She requested medical assistance, but the officers denied her request. Being uncomfortable and ashamed at the fact that she had urinated on herself during the incident, she began to remove the urine-soaked blue jeans which she was wearing under the full-length dress. As she did so, Burnett stood over her, ridiculed her incontinence, and asked Ayers if he could believe "that bitch pissed in my car."

After the officers completed their investigation, Burnett transported plaintiff to the police department for booking on charges of driving a motor vehicle while under the influence of alcohol, obstructing an officer, escape from arrest, and the added felony of prisoner placing bodily fluid on government employee. During the drive, plaintiff asked for Burnett's name and badge number, but Burnett falsely gave her the name Brandon Bowen, one of his colleagues at the Seminole Police Department. It was not until after plaintiff's release from detention that she learned Burnett had lied about his identity.

In *Graham v. Connor,* 490 U.S. 386 (1989), the Supreme Court stated that "[i]n addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394. Defendant argues that because his alleged conduct took place after the plaintiff had been placed under arrest, a Fourteenth Amendment violation has been alleged and a

4

Substantive Due Process standard is applicable.  Plaintiff objects, and the court declines to adopt defendant's contention.  In *Osei v. Brooks,* 2013 WL 1151619 (D.Colo.2013), the district court described a circuit split on the issue and found "[t]he Tenth Circuit has adopted a variant of the continuing-seizure rule whereby the Fourth Amendment governs claims by an arrestee challenging the use of force by state actors after a warrantless arrest, but before a probable cause hearing in front of a judicial officer." *Id.* at *5.  This court agrees with this interpretation of Tenth Circuit authority.  *See Frohmader v. Wayne,* 958 F.2d 1024, 1026 (10th Cir.1992).

"Excessive force claims under the Fourth Amendment are governed by an 'objective reasonableness' standard.  Under this standard, the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  In determining whether the use of force is reasonable in a particular situation, we consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether she is actively resisting arrest or attempting to flee." *Morris v. Noe,* 672 F.3d 1185, 1195 (10th Cir.2012)(citing *Graham v. Connor,* 490 U.S. 386 (1989)).

This court concludes all the *Graham* factors weigh in plaintiff's favor.  Defendant concedes that the charges to which plaintiff pled guilty were all misdemeanors.  The only felony charged (dismissed as part of the plea agreement) was Prisoner Placing Bodily Fluid on Government Employee.  This evidently refers to the plaintiff's urinating upon being

Tasered. How the prosecutor intended to prove the requisite *mens rea* for that felony is unclear.

There is no indication the plaintiff posed an immediate threat to officer safety, being handcuffed. No suggestion has been made that she carried a weapon. Finally, plaintiff did not actively resist arrest, as symbolized by the placing of handcuffs. While plaintiff had attempted to flee, the alleged excessive force did not take place during the run down the embankment. Plaintiff appears to concede that she refused the officer's command to exit the vehicle after she had moved from the backseat to the front seat a second time. (Plaintiff's Brief in Opposition at 22). The court considers this as a supplement to plaintiff's version of the facts previously recited. Plaintiff is, however, correct in stating that "she was not attempting to escape at the time Burnett used the Taser device on her three separate times." *Id.*

Based upon the foregoing, (which again is plaintiff's version of what took place), the court finds that a reasonable fact-finder could conclude that defendant's use of force was not "objectively reasonable" and therefore was constitutionally excessive. The court now moves to the second prong of the analysis.

To demonstrate the infringement of a clearly established right, a plaintiff must direct the court "to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline,* 519 F.3d 1090, 1092 (10ᵗʰ Cir.2008). This does not, however, necessarily require a case on point. *Wilson v. City of Lafayette,* 510 Fed.Appx. 775 (10ᵗʰ Cir.2013). Sometimes even a "general constitutional rule that has already been

established can apply with obvious clarity to the specific conduct in question." *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir.2006). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey v. City of Fed. Heights,* 509 F.3d 1278, 1284 (10th Cir.2007). "In all events, however, it remains necessary for the plaintiff to demonstrate that 'every reasonable official would have understood that what he' did violated the law." *Wilson,* 510 Fed.Appx. at 777 (citation omitted).

The court finds plaintiff has pointed to Tenth Circuit precedent that would indicate a constitutional violation in the specific circumstances presented. In *Casey v. City of Federal Heights,* 509 F.3d 1278 (10th Cir,2007), plaintiff left a courthouse carrying an official court file, an act that "may have been a misdemeanor under Colorado law." *Id.* at 1279-80. Upon voluntarily returning to the courthouse to give back the file, plaintiff was tackled by one officer and a second officer discharged her taser at the plaintiff. Other officers arrived and piled on plaintiff.

The Tenth Circuit reversed the trial court's grant of summary judgment to the officers on plaintiff's §1983 excessive force claims. The court noted that (1) the plaintiff's alleged crime was neither violent nor severe; (2) the first officer had no reason to believe that the plaintiff posed an immediate threat to the safety of anyone; (3) the plaintiff was not actively resisting arrest or attempting to evade arrest; and (4) the first officer never advised plaintiff that he was under arrest or requested that he submit peacefully. *Id.* at 1281-82. By contrast, in *Hinton v. City of Elwood,* 997 F.2d 774 (10th Cir.1993), the Tenth Circuit held that it was

7

not excessive for officers to use an "electrical stun gun" on a man. In that case, the court noted defendant's active resistance to arrest, including biting the officers. The officers had also warned plaintiff. *Id.* at 781-82. In *Mecham v. Frasier,* 500 F.3d 1200 (10th Cir.2007), the court held a single use of pepper spray after repeated warnings was not excessive force when needed to obtain compliance. The court also found it justified by two of the three factors under *Graham* – safety concerns and defendant's resistance to arrest. *Id.* at 1204-06.

Nevertheless, "because excessive force jurisprudence requires an all-things-considered inquiry with 'careful attention to the facts and circumstances of each particular case,' there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern." *Casey,* 509 F.3d at 1284 (citation omitted). Rather, the Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir.2006)(quotation omitted).

In a recent concurring opinion (in an unpublished decision), Judge Matheson additionally noted that "[c]ourts have found police conduct to violate clearly established law absent case law on point and without labeling the behavior egregious if the *Graham* factors tilt so clearly in favor of the plaintiff that any reasonable officer would have been on notice that the force used was unlawful. In other words, if the *Graham* analysis is decidedly in

favor of the [plaintiff], the violation can be clearly established." *Wilson,* 510 Fed.Appx. 775, 791 (10th Cir.2013)(Matheson, J., concurring)(citations omitted).

Further, "in *Orem v. Rephann,* [523 F.3d 442 (4th Cir.2008)], the court found a clearly established violation under *Graham* when an officer <u>repeatedly</u> tasered a suspect who was resisting arrest and verbally insulting officers, even though she had been physically restrained and was therefore not a threat." *Wilson,* 510 Fed.Appx. at 791-92. (Matheson, J., concurring)(emphasis added). This court has emphasized the word "repeatedly" in view of the facts of the present case and Judge Matheson's footnote distinguishing cases involving only a single taser shock. *Id.* at 792 n.1.

In his opening brief, defendant asserts the taser was only applied to plaintiff once. (Motion at 3). Plaintiff contends it was applied multiple times. (Brief in Opposition at 6)(Plaintiff's Deposition at 87.10-11). Under plaintiff's version of the facts, this court finds that the *Graham* analysis was sufficiently obvious as to put the officer on notice that his conduct was unlawful. The Tenth Circuit has held that "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force – or a verbal command – could not exact compliance." *Casey,* 509 F.3d at 1286. Under the plaintiff's version of the facts (which the court must accept at this stage) even if a single taser shock was not excessive, defendant should have ceased at that point in order to determine if plaintiff was now amenable to a verbal command or some lesser amount of force. Multiple shocks from the taser lead the court to deny qualified immunity. *See also Abbott v. Sangamon County,* 705 F.3d 706, 728 (7th Cir.2013)("Insofar as Travis *continued to resist*

9

after the first tasing, Deputy Sweeney did not violate clearly established law by using the taser in drivestun mode several more times until Travis was subdued.")(emphasis added).

This is quite a close case, in the court's view. The Tenth Circuit states that "the Supreme Court has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law.'" *Wilson,* 510 Fed.Appx. at 780 (citation omitted). On the other hand, the court must accept plaintiff's version, so long as it is not blatantly contradicted by the record such that no reasonable jury could believe it.

In sum, plaintiff has met her burden to show that defendant violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation. Therefore, the burden shifts back to defendant to prove that no genuine issues of material fact exist and that defendant is entitled to judgment as a matter of law. *See Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir.2002). Where, however, the record shows an unresolved issue of fact relevant to the qualified immunity analysis, the court must deny the motion for summary judgment. *Id.* This court does so.

It is the order of the court that the motion for summary judgment of defendant Michael Burnett (#31) is hereby denied.

**ORDERED THIS 30th DAY OF DECEMBER, 2013.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

10